**G. Clark HARRISON, Appellant (Plaintiff Below),**

v.

**Carl E. THOMAS and Lois L. Thomas, Appellees (Defendants Below).**

No. 89S05–0108–CV–379.

Supreme Court of Indiana.

Jan. 29, 2002.

David W. Stone IV, Anderson, Indiana, Attorney for Appellant.

Terry O'Maley Richmond, Indiana, Attorney for Appellees.

**ON PETITION FOR TRANSFER**

BOEHM, Justice.

Plaintiff G. Clark Harrison planned to construct an office complex in Richmond, Indiana to be leased to the United States

General Services Administration ("GSA") as a Social Security Administration office. To that end, on May 8, 1998, Harrison entered into a purchase agreement with defendants Carl and Lois Thomas calling for Harrison to buy the property where the Thomases operated a vintage car lot. The agreement was contingent upon Harrison's obtaining title to a nearby vacant lot. It also contained a preprinted provision stating that "Time is of the essence of this Contract," and a second provision that closing was to occur "on or before July 30, 1998, or within 15 days after Tenant approval, whichever is later."

The deal did not close by July 30, 1998. On September 11, 1998, John Christian, a broker representing Harrison, called the Thomases to report that Harrison was preparing to close, and Lois Thomas responded that the Thomases no longer wished to sell. In March 1999, Harrison obtained a lease from the GSA, and on March 23, 1999, Full House, LLC, owned 50% by Harrison, closed on the vacant lot.

On May 10, 1999, Harrison filed a complaint for specific performance, alleging that the Thomases refused to proceed with the sale and that monetary damages were inadequate. The Thomases counterclaimed, asserting that the purchase had not been closed by the date set in the purchase agreement and seeking damages and attorney's fees provided in the contract to a "prevailing party" in any litigation. After a bench trial, the trial court denied Harrison's request for specific performance and entered judgment for the Thomases, including attorney's fees in the amount of $5,390. No specific findings were requested by either party. The trial court entered a memorandum in which the court found that the terms of the purchase agreement required the transaction to be closed by July 30, 1998, and that condition was not met. The court also noted that the agreement was conditioned on Harrison's obtaining title to the vacant lot and concluded that purchase by Full House did not fulfill that condition. The Court of Appeals affirmed, holding that the agreement required closing by July 30 and that any effort to waive the condition relating to the vacant lot was required to be communicated to the Thomases. Harrison now seeks transfer to this Court.

## I. Time for Performance

The Thomases contend that under the provision that closing was to occur "on or before July 30, 1998, or within 15 days after Tenant approval, whichever is later," July 30, 1998 was the deadline for completion of the contract, although closing could have been required at an earlier date if tenant approval had been obtained sooner. Harrison responds that this provision demonstrated the desire of the parties to close by July 30, 1998, but also reflected their realization that closing might have to be delayed pending tenant approval. Both the trial court and the Court of Appeals agreed with the interpretation advanced by the Thomases. We do not.

As the Court of Appeals correctly noted, construction of the terms of a written contract is a pure question of law for the court, reviewed de novo. *Harrison v. Thomas*, 744 N.E.2d 977, 981 (Ind.Ct.App. 2001). We think this provision is not ambiguous. "Whichever is later" is a phrase found in innumerable agreements. It refers to the event occurring last in time, not first. It does not mean "whichever is earlier," which is the result the Thomases urge.

The Thomases point out that construing the phrase to permit fulfillment of the condition after July 30 could tie up their property indefinitely because the contract contains no drop-dead date for obtaining tenant approval. This is an an-

cient and often encountered problem, and the law has long ago addressed it. When the parties to an agreement do not fix a concrete time for performance, the law implies a reasonable time. *Epperly v. Johnson,* 734 N.E.2d 1066, 1072 (Ind.Ct. App.2000). What constitutes a reasonable time depends on the subject matter of the contract, the circumstances attending performance of the contract, and the situation of the parties to the contract. *Id.* It is an issue of fact. *In re Estate of Moore,* 714 N.E.2d 675, 677 (Ind.Ct.App.1999). Here, although the trial court characterized Harrison's explanation for his inability to close by July 30, 1998 as "unpersuasive," the court made no specific findings as to the reasonableness of the delay in obtaining tenant approval.

■ In this case, according to Christian, until September 8, 1998 there was no effort to close on the property. Harrison testified that he was not delayed in closing by any action of the Thomases until September 11, when the Thomases refused to proceed. Lois Thomas testified that closing by July 30 was important to the Thomases because their business was strongest during the summer months and it would be difficult to continue purchasing vintage cars if they did not close the deal and make plans to relocate their car lot by that date. She also testified that she told Christian she did not want to wait six or nine months to close, again for business reasons. Finally, she testified that Christian told the Thomases they would have their money by July 30.

■ Assuming the trial court's memorandum should be treated as special findings, special findings entered by the trial court sua sponte control only as to the issues they cover. *Moore v. Moore,* 695 N.E.2d 1004, 1008 (Ind.Ct.App.1998). Because it provided for closing at the "later" of two events, by its terms the agreement entered into on May 8 contemplated some delay beyond July 30, 1998. Harrison communicated his desire to close less than two months after July 30. Whether that delay and the additional time required to effect a closing was reasonable is unaddressed by the trial court. As to issues on which the trial court has not made findings, or on which the findings are inadequate, we treat the judgment as a general one and we examine the record and affirm the judgment if it can be sustained upon any legal theory the evidence supports. *Id.* In the review, we neither weigh the evidence nor judge witness credibility. *Id.* We believe this evidence, if credited, is sufficient to support a finding of unreasonable delay by Harrison in closing the deal, and accordingly affirm the judgment of the trial court.

## II. The Condition Precedent

Although this case is controlled by the resolution of the issue discussed in Part I, we also address the effect of the condition precedent because we do not agree with the Court of Appeals' resolution of that issue. Paragraph 5 of the purchase agreement provided that the contract was "[s]ubject to Buyer obtaining and closing of vacant lot." In the trial court, the Thomases contended that this provision created a condition precedent that must be met before Harrison could seek enforcement of the agreement. Harrison argued that because he was Full House's 50% owner and Chief Operating Officer, the condition precedent was satisfied when Full House obtained title to the lot. He also contended that the condition in the contract was for his sole benefit and was waived even if not fulfilled.

■ The trial court held that Full House was a separate legal entity from Harrison, and as a result the condition precedent had not been satisfied. The

Court of Appeals affirmed, but for a different reason. The Court of Appeals correctly noted that the purchaser of real property to whom the benefit of a contractual condition precedent inures may waive that condition and demand that the seller perform the contract. *Harrison*, 744 N.E.2d at 982; *Barrington Mgt. Co. v. Paul E. Draper Family Ltd.*, 695 N.E.2d 135, 140–41 (Ind.Ct.App.1998). In this case, the condition precedent that Harrison obtain title to the vacant lot was solely for Harrison's benefit. His development scheme hinged upon his ability to deliver title to both lots to the GSA, and it was a matter of complete indifference to the Thomases whether Harrison obtained the vacant lot, as long as he closed their sale. Accordingly, the condition precedent was waivable by Harrison. Although it recognized that Harrison could waive the condition, the Court of Appeals held that waiver of a condition precedent would have to be express and found no evidence Harrison had communicated to the Thomases "either orally or in writing, an express waiver of the vacant lot condition prior to the termination of the contract on July 30, 1998." *Harrison*, 744 N.E.2d at 983.

 We think acquisition by Full House, Harrison's affiliate, was likely substantial compliance with the condition. But even if not, we think Christian's contacting the Thomases and stating Harrison was preparing to close is, in practical terms, a communication that the condition would be waived. To reach its conclusion that the waiver was not communicated, the Court of Appeals relied heavily upon *Dvorak v. Christ*, 692 N.E.2d 920, 924 (Ind.Ct. App.1998), *trans. denied*, which held that where a purchaser had not communicated, either orally or in writing, an express waiver of a condition precedent before the expiration of the contract, the contract terminated and the seller was not required to

close. In *Dvorak*, the condition precedent was that the purchaser obtain a first mortgage loan for $451,600, and the contract provided that it would terminate and the rights of both parties would dissolve if the purchaser did not satisfy the condition precedent by March 29, 1995. *Id.* The purchaser failed to obtain the financing, so the contract terminated by its own terms on March 30, 1995. *Id.* Only then did the purchaser attempt to waive the condition precedent. *Id.*

 As already noted, the contract clearly contemplated the possibility of a closing after July 30. Here the agreement survived July 30 for a reasonable time and, if the September 11 conversation had not taken place after an unreasonable delay, a trier of fact could easily have found it to be a timely waiver. To the extent that the Court of Appeals read *Dvorak* to create a rigid requirement that every waiver of a condition precedent must be expressly made, either orally or in writing, we do not agree. It has long been the law in this state that "[t]he performance of a condition precedent may be waived in many ways." *Johnson v. Bucklen*, 9 Ind.App. 154, 157, 36 N.E. 176, 177 (1894). One such way is by the conduct of one of the parties to the contract. *Penmanta Corp. v. Hollis*, 520 N.E.2d 120, 122 (Ind.Ct.App. 1988), *trans. denied.*

 In sum, whether there has been a waiver of a contract provision is ordinarily a question of fact. *van de Leuv v. Methodist Hosp.*, 642 N.E.2d 531, 533 (Ind.Ct. App.1994). We would think that obtaining control of the vacant lot through an affiliate was substantial compliance with the condition in this contract. We would also suppose that contacting the Thomases and telling them Harrison was prepared to close is evidence of waiver, but once again we are confronted with a factual issue and no finding. For the reasons given in Part

I, this fact issue is not controlling, and we need not remand for its resolution.

### III. Attorney's Fees

 The trial court awarded the Thomases attorney's fees in the amount of $5,390. The Court of Appeals upheld the award because (1) the fees were foreseeable and (2) the purchase agreement provided for attorney's fees to a prevailing party. We agree that the contract supports the trial court's award. Paragraph 16 of the purchase agreement provided for "court costs and reasonable attorney's fees" for any signatory party that prevailed "in any legal or equitable proceeding against any other signatory brought under or with relation to the Contract or transaction." In Indiana, a contract that allows for the recovery of reasonable attorney's fees will be enforced according to its terms unless it is violative of public policy. *Willie's Const. Co., Inc. v. Baker*, 596 N.E.2d 958, 963 (Ind.Ct.App.1992), *trans. denied.* Solely for that reason, the trial court's award was appropriate. We do not agree with the first part of the Court of Appeals' analysis. In this case, the foreseeability of the fees is irrelevant and the only issue is the reasonableness of the award.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.